# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLACKBIRD TECH LLC D/B/A BLACKBIRD TECHNOLOGIES,<br><br>            Plaintiff,<br><br>            v.<br><br>ELB ELECTRONICS,<br><br>            Defendant. | No. 15-cv-56 (RGA) |
| BLACKBIRD TECH LLC D/B/A BLACKBIRD TECHNOLOGIES,<br><br>            Plaintiff,<br><br>            v.<br><br>ETI SOLID STATE LIGHTING, INC.,<br><br>            Defendant. | No. 15-cv-57 (RGA) |
| BLACKBIRD TECH LLC D/B/A BLACKBIRD TECHNOLOGIES,<br><br>            Plaintiff,<br><br>            v.<br><br>FEIT ELECTRIC COMPANY, INC.,<br><br>            Defendant. | No. 15-cv-58 (RGA) |
| BLACKBIRD TECH LLC D/B/A BLACKBIRD TECHNOLOGIES,<br><br>            Plaintiff,<br><br>            v.<br><br>PLUSRITE USA, CORP.,<br><br>            Defendant. | No. 15-cv-62 (RGA) |

## MEMORANDUM OPINION

Stamatios Stamoulis, Esq., Richard C. Weinblatt, Esq., Stamoulis & Weinblatt LLC, Wilmington, Del.; Wendy Verlander, Esq., Christopher Freeman, Esq., Sean K. Thompson, Esq. (argued), Blackbird Technologies, Boston, Mass., attorneys for Plaintiff Blackbird Tech LLC.

Karen Jacobs, Esq., Michael J. Flynn, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Del.; John M. Hintz, Esq. (argued), Maynard, Cooper & Gale, P.C., New York, N.Y., attorneys for Defendants ELB Electronics, Inc. and Feit Electric Company, Inc.

Philip A. Rovner, Esq., Jonathan A. Choa, Esq., Alan R. Silverstein, Esq., Potter Anderson & Corroon LLP, Wilmington, Del.; D. Peter Hochberg, Esq., Walter Haverfield LLP, Cleveland, Ohio, attorneys for Defendant ETi Solid State Lighting Inc.

Philip A. Rovner, Esq., Jonathan A. Choa, Esq., Alan R. Silverstein, Esq., Potter Anderson & Corroon LLP, Wilmington, Del.; David C. Radulescu, Esq. (argued), Tigran Vardanian, Esq., Robin Davis, Esq., Radulescu LLP, New York, N.Y., attorneys for Defendant PlusRite USA Corp.

December 26, 2016

**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff owns a patent claiming the invention of an apparatus to retrofit fluorescent lights with more energy efficient LED (light-emitting diodes) lighting. This invention is set out in claim 12 of U.S. Patent No. 7,086,747.

Plaintiff Blackbird Tech LLC asserts that the four Defendants, ELB Electronics, ETi Solid State Lighting, Feit Electric Company, and PlusRite USA, infringe the '747 patent. While the parties agreed to the construction of several terms in claim 12 (No. 15-cv-56 (RGA), D.I. 62 at 16–17; D.I. 67),[1] they dispute four terms.[2] The parties submitted their joint claim construction brief on November 22, 2016. (D.I. 62). I held a *Markman* hearing on December 9, 2016. (D.I. 68).

## I.  LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting

---

[1] All Docket Item ("D.I.") citations are to the record in No. 15-cv-56 (RGA).

[2] In the briefing, the parties disputed a fifth term (D.I. 62 at 43–52)—illumination surface—but at oral argument they stipulated that it did not need to be construed. (D.I. 68 at 55).

*Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of

4

extrinsic evidence, which "consists of all evidence external to the patent and

prosecution history, including expert and inventor testimony, dictionaries, and

learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks

omitted). Extrinsic evidence may assist the court in understanding the underlying

technology, the meaning of terms to one skilled in the art, and how the invention

works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim

construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but

because it defines terms in the context of the whole patent." *Renishaw PLC v.*

*Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a

claim interpretation that would exclude the inventor's device is rarely the correct

interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed.

Cir. 2007) (citation and internal quotation marks omitted).

## II. PATENTS AT ISSUE

Claim 12 is the only asserted claim in this case. (D.I. 68 at 7). Claim 12 reads:

**12.** An energy-efficient lighting apparatus for retrofit with an existing light
fixture having a ballast cover, comprising:
   a *housing* having an *attachment surface* and an illumination surface;
   a plurality of illumination surface holes in the illumination surface;
   a circuit board comprising a plurality of light-emitting diodes, wherein the
      circuit board is positioned adjacent the *housing* so that the plurality of
      light-emitting diodes *protrude through* the plurality of illumination
      surface holes in the illumination surface; and
   *a fastening mechanism* for securing the *attachment surface* of the lighting
      apparatus to the illumination surface, wherein the lighting apparatus is
      coupled to a wall switch and wherein the illumination of the light-
      emitting diodes is controllable based upon the position of the wall
      switch.

5

'747 patent, col. 11, ll. 26–42 (disputed terms italicized).

## III.   CONSTRUCTION OF DISPUTED TERMS

The parties contest the meaning of four terms in claim 12: "housing" (D.I. 62

at 17–28), "attachment surface" (*Id.* at 29–43), "protrude through" (*Id.* at 52–65),

and "fastening mechanism" (*Id.* at 66–86).

### 1.   "housing"

a.   *Plaintiff's proposed construction*: "portion of lighting apparatus that covers or protects other components," or alternatively "an enclosure that covers or protects other components"

b.   *Defendants' proposed construction*: "a structure that encloses other components"

c.   *Court's construction*: "structure that encloses other components"

The parties dispute whether the housing is a structure. Plaintiff construes

the housing as a portion (of the lighting apparatus) or an enclosure. Defendants

construe housing to be a structure.

Plaintiff's interpretation of housing essentially reads the limitation out of the

claim. As construed by Plaintiff, a housing could be anything or nothing. The

housing is only the sum of its parts, the illumination and attachment surfaces. For

Plaintiff, the housing could be a layer of paint. (D.I. 62 at 18; D.I. 68 at 25). No

person of ordinary skill reading the patent would think the housing could be a layer

of paint.

Defendants' construction gives meaning to the term. The claim language

supports their construction. The housing has components. In context, it takes a

6

structure to have other structural components. Further, claim 29, the corresponding method claim, requires the "providing" of a housing. Claim 29 thus describes the housing as a physical thing, not nothing. Accordingly, I am construing a housing to be a structure.

## 2. "attachment surface"

a.  *Plaintiff's proposed construction*: "layer of the housing to which the illumination surface is secured"

b.  *Defendants' proposed construction*: "the layer of the housing that is secured to the ballast cover and to which the illumination surface is secured"

c.  *Court's construction*: "layer of the housing that is secured to the ballast cover"

The parties dispute whether the attachment surface must be secured to the ballast cover. The claim language does not explicitly require the attachment surface to be secured to the ballast cover.

While the claim language does not explicitly require it, the language implicitly does. The attachment surface is one of two delineated surfaces in the housing. The term used—*attachment* surface—requires that the surface exist for attaching the housing to something. The preamble, which the parties agree is limiting (D.I. 68 at 16), suggests that something is the ballast cover by specifying that the invention for use to retrofit a "light fixture having a ballast cover."

7

The specification bolsters the conclusion that the attachment surface is to be secured to the ballast cover. In the specification's summary of the invention[3] the attachment surface is described as being secured to the ballast cover. *See* '747 patent, col. 3, ll. 7–10; *cf. id.* at ll. 46–48 (describing the corresponding method as including securing the attachment surface to the ballast cover).

Plaintiff criticizes Defendants' reliance on Figure 5 in the patent both because it is a preferred embodiment and because the description of Figure 5 says that it is "typical" for the attachment surface to be secured to the ballast cover. Plaintiff is correct that Figure 5 does not establish that the attachment surface is always secured to the ballast cover. The summary of the invention, however, does not say "typical" in describing the invention claimed in claim 12.

Plaintiff argues that the prosecution history contradicts Defendants' construction. During prosecution, the examiner proposed, and Plaintiff accepted, amendments that replaced ballast cover with illumination surface in the language of claims 12, 23, and 29. (D.I. 63 at 39). These amendments were meant "to resolve 112 issues...." (*Id.*). The prosecution history contains nothing explaining, or even

---

[3] In comparing the summary of the invention to the claim language, it is clear the relevant portion of the summary, '747 patent, col. 2, ll. 65–col. 3, ll. 10, speaks specifically to the invention claimed in claim 12. Both this part of the summary of the invention and claim 12 reference the attachment and illumination surfaces. Those terms are unique to claim 12, its dependent claims, and the corresponding method claims.

hinting at, the relationship between 35 U.S.C. § 112 and the amendments. (D.I. 68 at 36, 54).

The proposed claim explicitly stated that the attachment surface was to be secured to the ballast cover. The language was removed for reasons having nothing to do with overcoming prior art rejections and nothing to do with changing the claim scope. Thus, the prosecution history sheds no light on how to interpret "attachment surface."

Both parties propose construing attachment surface to include that it is secured to the illumination surface. The claim language, however, already provides that the attachment and illumination surfaces are secured to one another. Thus, there is no need to include this limitation in the construction of attachment surface. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Ideally, claim constructions give meaning to all of a claim's terms. *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). Construing a claim term to include features of that term already recited in the claims would make those expressly recited features redundant."). Thus, I will adopt Defendants' proposed construction, with modification.

### 3. "protrude through"

a. *Plaintiff's proposed construction*: Plain meaning or "project through"

b. *Defendants' proposed construction*: "passing from beneath a surface to the other side of that surface"

c. *Court's construction*: "are at least partially beneath the surface of and jut out of"

9

The parties dispute whether a LED must pass from one side of the illumination surface hole[4] all the way to and out the other side. Under Defendants' construction, the LEDs must protrude out of both ends of the illumination surface holes. In the brief, Plaintiff essentially suggested that the term "through" did not have to be construed at all. At the hearing, Plaintiff argued that the LED must extend into the hole and jut out of one side, but is not required to jut out of both sides of the hole.

Defendants address their argument to a straw man. They say that the LEDs cannot protrude from the illumination surface without entering the illumination surface holes at all. (D.I. 68 at 62, 68). Defendants are correct; the use of the term "through" does make clear that the LEDs are within the illumination surface holes to some extent. But Plaintiff concedes the point. (*Id.* at 58). That does not mean, however, that the LEDs must jut out of both ends of the illumination surface holes. Nothing in the specification requires it either.

Thus, I am construing "protrude through" to require that the LEDs "are at least partially beneath the surface of and jut out of" the illumination surface holes. This construction gives meaning to the use of the word "through" without importing additional limitations that are not required.

---

[4] In the briefing and at the hearing, the parties described the LEDs as protruding through the illumination surface but, to be precise, the claim language has the LEDs "protruding through the illumination surface holes...."

10

## 4. "fastening mechanism...."

a. *Plaintiff's proposed construction*: not means-plus-function

b. *Defendants' proposed construction*: means-plus-function

c. *Court's construction*: "fastener"

The parties dispute whether the last limitation of claim 9 is a means-plus-function claim thereby invoking § 112, para. 6. The limitation reads in relevant part: "a fastening mechanism for securing the attachment surface of the lighting apparatus to the illumination surface...." Defendants argue it is means-plus-function, Plaintiff the opposite.

Because the language does not include "means," there is a rebuttable presumption that it is not means-plus-function. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc). Defendants bear the burden of showing this limitation is a means-plus-function claim by a preponderance of the evidence. *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003).

While "means" is not in the claim language, form is not "blindly elevated" over substance. *Williamson*, 792 F.3d at 1348. Instead, "the essential inquiry is... whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.*; *see also id.* at 1349.

In *Williamson*, the Federal Circuit pointed out that "mechanism" on its own lends little to defining the structure claimed. *Id.* at 1350 ("Generic terms such as 'mechanism,' 'element,' [and] 'device'... reflect nothing more than verbal

11

constructs...."). Mechanism "may be used in a claim in a manner that is tantamount to using the word 'means'...." *Id.*

Here, the term "fastening" provides sufficient structure when modifying the term mechanism to place the claim outside the scope of § 112, para. 6. A person of ordinary skill in the art would understand a "fastening mechanism" to be a fastener. Fasteners are a generally understood class of physical structures. "Fastening mechanism" is sufficient structure even though it invokes a class of structures, rather than a specific structure, and it uses a functional name to do so. *See Personalized Media v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998) ("[N]either the fact that a 'detector' is defined in terms of its function, nor the fact that the term 'detector' does not connote a precise physical structure in the minds of those of skill in the art detracts from the definiteness of structure.").

At oral argument, Defendants argued that the claim would not be means-plus-function if it read a 'fastener for securing...'. (D.I. 68 at 80). In the brief as well, Defendants suggest it would be another thing if the claim language read "a fastener mechanism." (D.I. 62 at 75). "Fastening" and "fastener," however, are basically interchangeable words. Both are nouns. "Fastening," *Webster's Third New International Dictionary, Unabridged* (Online Ed.) (accessed Dec. 9, 2016); "Fastening," *Oxford English Dictionary* (Online Ed.) (accessed Dec. 9, 2016). Both relate to making something fast or secured. *Id.* In fact, one dictionary includes "fastener" as a definition of fastening. *Webster's, supra.* Thus, I am construing claim 12 not to include any means-plus-function limitations.

12

By subsequent letter (D.I. 67), the parties agreed that if the term were not means-plus-function, it should be construed as "fastener." Having found the term is not means-plus-function, I will construe it as "fastener."

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion.

13