## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES, | |
| Plaintiff, | |
| v. | C.A. No. 15-056-RGA (Consolidated) |
| FEIT ELECTRIC COMPANY, INC., | |
| Defendant. | |

---

## [JOINT PROPOSED] FINAL JURY INSTRUCTIONS[1]

---

[1] For a number of instructions, the parties provide competing instructions for an entire instruction. In those instances, the parties object entirely to one another's instructions.

After submitting this proposal, the parties will continue to attempt to narrow the issues and will submit an updated proposal reflecting the narrowed disputes. The parties agree on the form of the proposed final jury instructions where noted.

The parties propose the attached jury instructions without the benefit of the Court's ruling on several issues that may impact the instructions.  The parties reserve the right to raise further objections or propose further modifications to the proposed instructions as necessary to conform the instructions to the evidence that is submitted during trial. In that regard, the Parties agree that no objections or arguments are waived at this time if not included in this version of the document.

**TABLE OF CONTENTS**

1     GENERAL INSTRUCTIONS ............................................................................... 1

      1.1     INTRODUCTION [AGREED] ................................................................... 1

      1.2     JURORS' DUTIES [AGREED] .................................................................. 2

      1.3     BURDENS OF PROOF [DISPUTED] ...................................................... 2

      1.4     EVIDENCE DEFINED [AGREED] ........................................................... 4

      1.5     USE OF NOTES [AGREED] ...................................................................... 5

      1.6     CONSIDERATION OF EVIDENCE [AGREED] .................................... 5

      1.7     DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED] ............ 6

      1.8     CREDIBILITY OF WITNESSES [AGREED] ........................................ 6

      1.9     EXPERT WITNESSES [AGREED] ........................................................... 7

      1.10    DEMONSTRATIVE EXHIBITS [AGREED] ......................................... 8

      1.11    STATEMENTS OF COUNSEL [AGREED] ............................................ 9

2     THE PARTIES AND THEIR CONTENTIONS [DISPUTED] ........................ 9

3     THE PATENT CLAIM........................................................................................ 11

      3.1     THE ROLE OF CLAIMS IN A PATENT [AGREED]........................ 11

      3.2     CONSTRUCTION OF CLAIMS [AGREED]...................................... 12

      3.3     HOW A CLAIM DEFINES WHAT IT COVERS [AGREED] ........... 12

4     INFRINGEMENT................................................................................................ 13

      4.1     INFRINGEMENT GENERALLY [DISPUTED].................................. 13

      4.2     INFRINGEMENT—INDIRECT INFRINGEMENT BY ACTIVE
              INDUCEMENT [DISPUTED] ................................................................ 15

      4.3     INFRINGEMENT—DIRECT INFRINGEMENT BY LITERAL
              INFRINGEMENT [DISPUTED]............................................................ 17

      4.4     INFRINGEMENT—DIRECT INFRINGEMENT UNDER THE DOCTRINE OF
              EQUIVALENTS [AGREED]................................................................... 18

5      INVALIDITY [DISPUTED] ........................................................ 19

       5.1     PRIOR ART [DISPUTED] .................................................. 21

       5.2     PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE PATENT
       OFFICE [DISPUTED] ................................................................... 21

       5.3     PERSON OF ORDINARY SKILL IN THE ART [AGREED] ........................... 22

       5.4     ANTICIPATION [DISPUTED] ............................................. 23

       5.5     OBVIOUSNESS [AGREED] ................................................ 25

       5.6     WRITTEN DESCRIPTION [AGREED] ....................................... 26

       5.7     ENABLEMENT [DISPUTED] .............................................. 28

       5.8     INDEFINITENESS [DISPUTED] .......................................... 30

6      DAMAGES [DISPUTED] .......................................................... 31

       6.1     REASONABLE ROYALTY ................................................. 33

               6.1.1   FACTORS FOR DETERMINING A REASONABLE ROYALTY
                       [DISPUTED] .................................................. 35

               6.1.2   REASONABLE ROYALTY—USE OF COMPARABLE LICENSE
                       AGREEMENTS [DISPUTED] ...................................... 39

               6.1.3   RUNNING ROYALTY [AGREED] .................................. 40

               6.1.4   TIME PERIOD FOR CLAIMED DAMAGES [DISPUTED] ................ 40

7      DELIBERATION AND VERDICT ................................................... 41

       7.1     INTRODUCTION [DISPUTED] ........................................... 41

       7.2     UNANIMOUS VERDICT [DISPUTED] ...................................... 42

       7.3     DUTY TO DELIBERATE [AGREED] ....................................... 44

       7.4     NO OUTSIDE INFORMATION OR COMMUNICATION [AGREED] ........... 44

       7.5     COURT HAS NO OPINION [AGREED] .................................... 45

# 1   GENERAL INSTRUCTIONS

## 1.1   INTRODUCTION [AGREED] [2]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. If you prefer, you may read along as I deliver them; however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at any time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. In following my instructions you must follow all of them and not single out some and ignore others. They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

---

[2] Source: *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 1-2; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 2.

**1.2   JURORS' DUTIES[3] [AGREED]**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented. I will instruct you about the burden of proof shortly. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**1.3   BURDENS OF PROOF [DISPUTED]**

**Blackbird's Proposal:[4]**

The plaintiff, Blackbird, has the burden of proving patent infringement by what is called a preponderance of the evidence. That means Blackbird has to produce evidence which, when considered in light of all of the facts, leads you to believe that its claims are more likely true than not. To put it differently, if you were to put the plaintiff's and the defendant's evidence on the

---

[3] Source:  *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 4; Source: *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 1-2; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 2.

[4] Source: Adapted from *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 3.

opposite sides of a scale, the evidence supporting the plaintiff's claims would have to make the scales tip somewhat on its side.

In this case, Defendant Feit Electric contends that claim 12 of U.S. Patent No. 7,086,747, which I will also refer to as the '747 patent, is invalid. Because a patent is presumed valid, Feit Electric has the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

**Feit Electric's Proposal:**[5]

For each issue in this case, either Blackbird or Feit Electric bears the burden of proof, which means that it bears the burden of persuading you to find in its favor. In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

For any issue on which a party bears the burden of proof by a preponderance of the evidence, that party has carried its burden if you find that what the party claims is more likely true than not, when considered in light of all of the evidence. To put it differently, if you were to put each party's evidence on the opposite sides of a scale, the evidence supporting the party with the burden of proof would have to make the scales tip somewhat on the side of that party.

Here, Blackbird has the burden of proving by a preponderance of the evidence that Feit Electric is liable for infringement of the '747 Patent, and the amount of damages Blackbird should receive to compensate them for any infringement.

---

[5] Source:  *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 6.

For any issue on which a party bears the burden of proof by clear and convincing evidence, that party has carried its burden if you find that what the party claims is highly probable, when considered in light of all of the evidence. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Here, Feit Electric has the burden of proving by clear and convincing evidence that claim 12 of the '747 patent is invalid.

### 1.4    EVIDENCE DEFINED[6] [AGREED]

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard. You must completely ignore all of these things. Do not speculate about what a witness might

---

[6] Source: *EMC Corp., et al v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, D.I. 448, Final Jury Instructions, at 4; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 3-4; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 4.

have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Sometimes testimony and exhibits are received only for a limited purpose.  When I give instructions regarding that limited purpose, you must follow it.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.5    USE OF NOTES[7] [AGREED]

You may use notes taken during the trial to assist your memory. Remember that your notes are for your personal use. They may not be given or read to anyone else. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your notes are valuable only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

### 1.6    CONSIDERATION OF EVIDENCE[8] [AGREED]

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[7] Source: *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 6; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 5.

[8] Source: *EMC Corp., et al v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, D.I. 448, Final Jury Instructions, at 5; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 4; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 7.

## 1.7   DIRECT AND CIRCUMSTANTIAL EVIDENCE[9] [AGREED]

There are two kinds of evidence: direct evidence and circumstantial evidence. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is indirect proof of a fact, *i.e.*, proof of facts from which you may infer or conclude that other facts exist. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between the weight that you should give to either direct or circumstantial evidence, nor does it say that one type of evidence is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.8   CREDIBILITY OF WITNESSES[10] [AGREED]

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the

---

[9] Source: *EMC Corp., et al v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, D.I. 448, Final Jury Instructions, at 6; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 4; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 8.

[10] Source: *EMC Corp., et al v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, D.I. 448, Final Jury Instructions, at 7-8; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 5-6; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 9.

witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses.

## 1.9   EXPERT WITNESSES[11] [AGREED]

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field — he or she is called an expert witness — is

---

[11] Source: *EMC Corp., et al v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, D.I. 448, Final Jury Instructions, at 10: *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 10.

permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credibility of the expert witness and decide whether to rely upon his or her testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

### 1.10   DEMONSTRATIVE EXHIBITS[12] [AGREED]

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. Some of these admitted exhibits or portions of them have been displayed for you on a screen and you will have these admitted exhibits, whether displayed on a screen or not, in the jury room during your deliberations.

There are other exhibits (including charts and animations presented by attorneys and witnesses) that were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

---

[12] Source:  *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 5; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 6.

### 1.11  STATEMENTS OF COUNSEL[13] [AGREED]

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

## 2    THE PARTIES AND THEIR CONTENTIONS [DISPUTED]

**Blackbird's Proposal:**[14]

I will now review for you the parties in this action, and the positions that you will have to consider in reaching your verdict. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

The plaintiff is Blackbird Tech LLC, known as Blackbird Technologies. The defendant is Feit Electric Company, Inc.

---

[13] Source: *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 6.

[14] Source: Adapted from *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 7-8; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 11; 2020 Federal Circuit Bar Association Model Patent Jury Instructions ("FCBA") § B.1.

Blackbird owns the Asserted Patent that is at issue in this case.

As I previously told you, Blackbird contends that certain Feit Electric lighting products infringe claim 12 of the '747 patent.

Feit Electric denies that it has infringed claim 12 of the '747 patent and also argues that the claim is invalid.

In this case, you must decide the issues according to the instructions I give you. In general these issues are:

1.  Whether Blackbird has proven by a preponderance of the evidence that Feit Electric has infringed claim 12 of the '747 patent.

2.  Whether Feit Electric has proven by clear and convincing evidence that claim 12 of the '747 patent is invalid.

3.  If the Asserted Claim is infringed and not invalid, what amount of damages Blackbird has proven by a preponderance of the evidence that it is entitled to as a result of the infringement.

**Feit Electric's Proposal:[15]**

I will now review for you the parties in this action, and the positions that you will have to consider in reaching your verdict. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you at the beginning of this trial, the plaintiff is Blackbird Tech LLC, known as Blackbird Technologies or "Blackbird." The defendant is Feit Electric Company, Inc. known as "Feit Electric."

Blackbird contends that certain Feit Electric products, when used by end users of Feit Electric's products, directly infringe claim 12 of the '747 patent and that Feit Electric actively encouraged those end users to infringe claim 12, in a manner it knew would infringe the claim.

---

[15] Source:  *see* footnote 14.

Feit Electric denies that end users of its products have infringed claim 12 or that Feit Electric actively encouraged others to infringe claim 12 of the '747 patent. Feit Electric also argues that claim 12 is invalid.

In this lawsuit, you must decide the issues according to the instructions I give you. In general these issues are:

1.   Whether Blackbird has proven by a preponderance of the evidence that a user of Feit Electric's products has directly infringed claim 12 of the '747 patent.

2.   If Blackbird has proven that users of Feit Electric products infringe claim 12, whether Blackbird has proven by a preponderance of the evidence that Feit Electric has actively induced those users to infringe claim 12 of the '747 patent, knowing such use would infringe the claim.

3.   Whether Feit Electric has proven by clear and convincing evidence that claim 12 of the '747 patent is invalid.

4.   If you find that Blackbird has proven that Feit Electric induced infringement of Claim 12 of the '747 patent, **and** you find that Feit Electric has not proven that the claim is invalid, what amount of damages Blackbird has proven by a preponderance of the evidence that it is entitled to as a result of the infringement of claim 12 of the '747 patent.

## 3   THE PATENT CLAIM

### 3.1   THE ROLE OF CLAIMS IN A PATENT[16] [AGREED]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers (the "claimed invention"). The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the

---

[16] Source: FCBA § 2.1; *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 7; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 8; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 12.

breadth of the patent's coverage. Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

## 3.2    CONSTRUCTION OF CLAIMS[17] [AGREED]

The law says that it is the Court's duty to define the terms of the patent's claims. I have already defined the meaning of some of the words of claim 12 in this case. These definitions have been provided to you on a chart in your juror notebooks.

You must accept my definition of these words in claim 12 as correct. You must use the definitions I give you for claim 12 to make your decision about whether the claim is infringed or invalid. You must ignore any different definitions used by the witnesses or the attorneys. You should not take my definition of the language of the claim 12 as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, namely infringement and invalidity. These issues are yours to decide.

When I have not defined a term, you should give it its ordinary meaning.

## 3.3    HOW A CLAIM DEFINES WHAT IT COVERS[18] [AGREED]

I will now explain how a claim defines what it covers. A claim sets forth, in words, a set of requirements in a single sentence. If a device satisfies each and every one of these requirements, then it is covered by the claim.  Here there is only one claim at issue – Claim 12 of the '747 patent, and that is the only claim you should consider.

---

[17] Source: FCBA § 2.1; *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 9; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 9-10.

[18] Source: FCBA § 2.1; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 13.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

Sometimes the words in a patent claim are difficult to understand, which is why I have defined certain specific terms in the claims.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what the claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

# 4   INFRINGEMENT

## 4.1   INFRINGEMENT GENERALLY [DISPUTED]

**Blackbird's Proposal:**[19]

Blackbird contends that Feit Electric infringes the '747 patent. I will now instruct you how to decide whether or not Feit Electric has infringed claim 12 of the '747 Patent.

There are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct

---

[19] Source: FCBA § 3.1; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 15.

infringement. To prove indirect infringement, Blackbird must also prove that Feit Electric's indirect infringement caused direct infringement.

In this case, Blackbird contends that Feit Electric's customers and/or end users of the Accused Products directly infringe the '747 patent, and Feit Electric is liable for actively inducing that direct infringement.

In order to prove infringement, Blackbird must prove that the requirements of infringement are met by a preponderance of the evidence, *i.e.*, that it is more likely than not that all of the requirements of infringement have been proved.

I will now explain each of these types of infringement in more detail.

**<u>Feit Electric's Proposal:</u>**[20]

Patent law provides that any person or business entity that makes, uses, sells, offers to sell, or imports into the United States, without the patent owner's permission, any product, apparatus or method covered by at least one claim of a United States patent before the patent expires, infringes the patent.

In this case, Blackbird alleges that Feit Electric is liable for infringing claim 12 of the '747 patent.  As a general matter, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, Blackbird must also prove that Feit Electric's indirect infringement caused direct infringement.

---

[20] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 11; FCBA § 3.1; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 15.

In this case, Blackbird has alleged that Feit Electric's end users of the Accused Products directly infringe claim 12 of '747 patent, and Feit Electric is liable for actively inducing that direct infringement.

The Court has already decided that Feit Electric does not directly infringe claim 12 of the '747 patent.  The Court also has already decided that Feit Electric is not liable for contributory infringement.  Therefore, there is no need for you to consider those issues.  Thus, the only issues you need to decide are whether there is direct infringement of claim 12 by users of Feit Electric's Accused Products and whether Feit Electric actively induced that direct infringement.

In order to prove infringement, Blackbird must prove that the requirements of infringement are met by a preponderance of the evidence, *i.e.*, that it is more likely than not that all of the requirements of infringement have been proved.

## 4.2   INFRINGEMENT—INDIRECT INFRINGEMENT BY ACTIVE INDUCEMENT [DISPUTED]

**Blackbird's Proposal:**[21]

There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, Blackbird must also prove that Feit Electric's actions caused direct infringement.

Blackbird contends that Feit Electric has infringed by actively inducing customers and/or end users to directly infringe the Asserted Claim. Feit Electric has infringed by active inducement of a claim if Blackbird proves by a preponderance of the evidence: (1) that the acts that are actually carried out by customers and/or end users directly infringe that claim; and (2) that Feit Electric took action intending to cause the infringing acts by customers and/or end

---

[21] Source: Adapted from FCBA § 3.2; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 14.

users; and (3) that Feit Electric was aware of the asserted patent and knew that the acts, if taken, would constitute infringement of the patent.

**Feit Electric's Proposal:**[22]

There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, Blackbird must also prove that Feit Electric's actions caused direct infringement.

Blackbird contends that Feit Electric is liable for induced infringement by actively inducing end users of Feit Electric's products to directly infringe claim 12 of the '747 patent.

Feit Electric is liable for induced infringement of claim 12 only if Blackbird proves by a preponderance of the evidence that:

(1) acts are actually carried out by end users of Feit Electric's products that directly infringe that claim;

(2) Feit Electric took action intending to cause the infringing acts by those end users; and

(3) Feit Electric was both aware of the '747 patent and knew that the acts of the end users, if taken, would constitute infringement of that patent, or believed that there was a high probability that the acts, if taken, would infringe the '747 patent and took deliberate steps to avoid learning of that infringement.

If you find that Feit Electric was aware of the patent, but believed that any acts it encouraged did not infringe that patent, then Feit Electric cannot be liable for inducement.

In order to establish induced infringement, it is not sufficient that another party itself directly infringes the claim. Nor is it sufficient that Feit Electric was aware of the acts of another

---

[22] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 14.

party that constitute the direct infringement.  Rather, in order to find induced infringement, you must find either that (1) Feit Electric intended another party to infringe the '747 patent; or (2) that Feit Electric believed that there was a high probability that another party would infringe that patent, but deliberately avoided learning the infringing nature of the other party's acts.

The mere fact, if true, that Feit Electric knew or should have known that there was a substantial risk that another party's acts would infringe the '747 patent would not be sufficient for induced infringement.

### 4.3  INFRINGEMENT—DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT  [DISPUTED]

**<u>Blackbird's Proposal:</u>**[23]

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove direct infringement by literal infringement, Blackbird must prove by a preponderance of the evidence that one of Feit Electric's customers or end users, made, used, sold, offered for sale within, or imported into the United States a product or process that meets all of the requirements of the claim and did so without the permission of the patent owner during the time the '747 patent was in force. You must compare the Accused Products with each and every one of the requirements of claim 12 to determine whether all of the requirements of that claim are met. If they are met, there is infringement. Infringement does not require proof that Feit Electric intended to infringe.

---

[23] Source: FCBA § 3.1a; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 15.

**Feit Electric's Proposal:**[24]

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove direct infringement by literal infringement, Blackbird must prove by a preponderance of the evidence that at least one end user used a product that meets all of the requirements of claim 12 and did so without Blackbird's permission. You must compare the Accused Products with each and every one of the elements of claim 12 to determine whether all of the elements of that claim are met. If they are met, there is direct infringement. Direct infringement does not require proof that Feit Electric's end users intended to infringe.  However, for Feit Electric to be liable for active induced infringement, Feit Electric must have intended to encourage the infringement, in a manner it knew would infringe claim 12 of the '747 patent.

## 4.4   INFRINGEMENT—DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[25] [AGREED]

If a person or company makes, uses, sells, offers to sell within, or imports into the United States a product that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies the claim elements "under the doctrine of equivalents."

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements that literally meet or are equivalent to each and every element of the claim. You may find that an element is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences

---

[24] Source: FCBA § 3.1a; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 15.

[25] Source:  FCBA § 3.1c.

between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim.

In order to prove infringement by "equivalents," Blackbird must prove the equivalency of the structure to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the accused product either literally or under the doctrine of equivalents for you to find infringement.

Known interchangeability of the claim element and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents. In order for the structure to be considered interchangeable, the claim element must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.

## 5   INVALIDITY [DISPUTED]

**Blackbird's Proposal:**[26]

I will now instruct you on the rules you must follow in deciding whether or not Feit Electric has proven that the asserted claim of the '747 patent is invalid. To prove that claim 12 of the patent is invalid, Feit Electric must persuade you by clear and convincing evidence. In other words, you must be left with a clear conviction that the claim is invalid.

---

[26] Source: FCBA § 4.1; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 17.

**Feit Electric's Proposal:**[27]

In this case, Feit Electric contends that claim 12 of the '747 patent is invalid under the patent law concept known as anticipation.  In other words, Feit Electric contends that claim 12 of the '747 patent is invalid because it is anticipated by the prior art. I will explain shortly what "prior art" is.

Feit Electric also has challenged the validity of claim 12 of the '747 patent under the patent law concept known as obviousness. In other words, Feit Electric contends that claim 12 of the '747 patent is invalid because it would have been obvious in view of the prior art.

Feit Electric also contends that claim 12 of the '747 patent is invalid for lacking enablement.  In other words, Feit Electric contends that claim 12 of the '747 patent is invalid for failure to enable a person of skill in the art to practice the full scope of the invention based on the description contained in the patent.  Feit Electric also contends that claim 12 of the '747 patent lacks an adequate written description of how to make and use the product described in claim 12. Finally, Feit Electric contends that claim 12 of the '747 patent is invalid as indefinite.

Patent invalidity is a defense to patent infringement.  For a patent to be valid, the invention claimed in the patent must be new, useful, and nonobvious, and the patent must meet other requirements such as containing a sufficient written description of the claimed invention, containing an enabling disclosure, and containing one or more claims that are not indefinite.  It is your job to determine whether Feit Electric has proven, by clear and convincing evidence, that the legal requirements for patentability were not met, and thus, that claim 12 of the '747 patent is invalid.

---

[27] Source: *EMC Corp., et al v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, D.I. 448, Final Jury Instructions, at 21; *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 17.

### 5.1   PRIOR ART[28] [DISPUTED]

Under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." In this case, **[BLACKBIRD: Feit Electric contends that]** that the following patents and patent applications are prior art to the asserted patent: *Showers* (DTX-052), *Timmermans* (DTX-053), *Nerone* (DTX-054), *Rhodes* (DTX-055), *Hunter* (DTX-056), *Cross* (DTX-057), *Okazaki* (DTX-58), *Davis* (DTX-059), *Johnson* (DTX-60), and *Leong* (DTX-61).[29]

### 5.2   PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE PATENT OFFICE [DISPUTED]

**Blackbird's Proposal:**[30]

Regardless whether particular prior art references were considered by the United States Patent and Trademark Office (or "PTO") during the prosecution of the application that matured into the Asserted Patent, Feit Electric must prove that the challenged Asserted Claims are invalid. Feit Electric must do so by clear and convincing evidence. This burden of proof on Feit Electric never changes regardless whether or not the PTO considered the reference.

---

[28] Source: FCBA § 4.3; *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 20; Source: *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 18; FCBA at § 4.2a-2.

[29] Feit Electric will update the list of prior art once it narrows its invalidity case to omit references that will not be the basis for its invalidity arguments at trial.

[30] Source: 2019 AIPLA Model Patent Jury Instructions § 5.1; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 16.

**Feit Electric's Proposal:**[31]

The burden of proof on Feit Electric to prove that the prior art renders a claim invalid never changes regardless of whether the Examiner in the Patent Office considered the prior art reference during the prosecution of the application which matured into a patent. In deciding the issue of invalidity, you may take into account the fact whether or not the Patent Office considered the prior art when it issued the patents. Prior art that differs from the prior art considered by the Patent Office may carry more weight than prior art that was considered and may make Feit Electric's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

### 5.3   PERSON OF ORDINARY SKILL IN THE ART [32] [AGREED]

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the invention date.

You must determine the level of ordinary skill in the field of the invention.  In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

---

[31] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 20.

[32] Source:  FCBA §4.3(c)(i).; *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 19.

## 5.4   ANTICIPATION [DISPUTED]

**Blackbird's Proposal:**[33]

In order for someone to be entitled to a patent, the invention must actually be "new." In general, inventions are new when they have not been made, used, or disclosed before. In this case, Feit Electric contends that claim 12 is not new.

Anticipation must be determined on a claim-by-claim basis. Feit Electric must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in a prior publication or patent, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular publication or patent.

**Feit Electric's Proposal:**[34]

In general, inventions are new when they have not been made, used, or disclosed before.

The legal name for a challenge to the validity of a patent claim on the basis that the claim is not new is "anticipation."  Invalidity by anticipation requires that a single prior art reference

---

[33] Source: FCBA § 4.3b-1; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 20.

[34] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 21-22.

disclosed each and every limitation of a claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in a particular prior art reference, you should take into account what a person of ordinary skill in the art would have understood from his or her review of that reference.

In determining whether a single prior art reference anticipates a patent claim, you should take into consideration not only what is expressly disclosed in that prior art reference but also what is inherently present or disclosed in that reference or inherently results from its practice. A prior art reference inherently anticipates a patent claim if the element or feature missing from the reference would necessarily result from what that reference teaches to a person of ordinary skill in the art.

A party asserting inherent anticipation must prove that the allegedly inherent element was necessarily present in that reference. The fact that it was likely present is not sufficient. It is not required, however, that a person of ordinary skill actually recognized or appreciated the inherent disclosure at the time the prior art reference was first known or used. Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipating reference, provided the allegedly inherent feature was necessarily and inevitably present in the reference. Evidence outside of the prior art reference itself may be used to show that elements that are not expressly disclosed in the reference are inherent in it.

In this case, Feit Electric contends that the invention of claim 12 of the '747 patent is anticipated by any one of *Showers* (DTX-052), *Timmermans* (DTX-053), or *Leong* (DTX-61). Feit Electric must prove by clear and convincing evidence that claim 12 of the '747 patent was not new based on at least one of *Showers*, *Timmermans*, or *Leong*.

## 5.5   OBVIOUSNESS[35] [AGREED]

Even though a claimed invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the claimed invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. Feit Electric may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of technology of the patent.

In determining whether the claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention. Do not use hindsight to combine prior art references; consider only what was known at the time of the invention. You should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining elements of prior art.

In considering whether the claimed invention would have been obvious, you must first determine the scope and content of the prior art. The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

---

[35] Source:  FCBA §§ 4.3(c), 4.3(c)(ii); American Intellectual Property Law Association ("AIPLA") Model Jury Instructions, § 7.0; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 17; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 21.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may (but are not required to) find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of technology of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as:

    (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

    (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

    (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

    (4) whether the prior art teaches away from combining elements in the claimed invention;

    (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.

## 5.6   WRITTEN DESCRIPTION[36] [AGREED]

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date.

---

[36] Source: FCBA §4.2a

Feit Electric contends that claim 12 of the '747 patent is invalid because the specification of the '747 patent does not contain an adequate written description of the claimed invention. To succeed, Feit Electric must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of December 11, 2002 would not have recognized that it describes the full scope of what is claimed in claim 12 the '747 patent. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. In considering whether a claimed element is disclosed inherently, it is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

### 5.7   ENABLEMENT[37] [DISPUTED]

**Blackbird's Proposal:**[38]

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement. Feit Electric contends that claim 12 of the '747 patent is invalid because the specification does not "enable" the full scope of the claimed invention. To succeed, Feit Electric must show by clear and convincing evidence that the '747 patent specification does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the effective filing date, here December 11, 2002, without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of machine-to-machine communication technology;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

---

[37] Source:  *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 26-27.

[38] Source: FCBA §4.2b.

(5) the nature and predictability of the field of machine-to-machine communication technology;

(6) the level of ordinary skill in the field of machine-to-machine communication technology; and

(7) the scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

**Feit Electric's Proposal:**[39]

Feit Electric contends that claim 12 of the '747 patent is invalid because the patent does not disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed, to make and use the full scope of the claimed invention. This requirement is known as the enablement requirement, and it is designed to prevent both inadequate disclosure of an invention and overbroad claiming that might otherwise attempt to cover more than was actually invented.

The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a sufficient disclosure of how to carry out the claimed invention. If a patent claim is not enabled, it is invalid.

---

[39] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 26-27.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. Feit Electric bears the burden of establishing lack of enablement by showing by clear and convincing evidence that a person skilled in the art, upon reading the patent, would not be able to make the full scope of claim 12 work without undue experimentation. The fact that some experimentation may be required for a skilled person to make or use the full scope of claim 12 does not mean that a patent's written description fails to meet the enablement requirement.

Factors you may consider in determining whether making the full scope of the claimed invention would require undue experimentation include:

1. the quantity of experimentation necessary;

2. the amount of direction or guidance disclosed in the patent;

3. the presence or absence of working examples in the patent;

4. the nature of the invention;

5. the state of the prior art;

6. the relative skill of those in the art;

7. the predictability of the art; and

8. the breadth of the claim.

If you find that claim 12 did not comply with the enablement requirement, you must find claim 12 invalid.

## 5.8   INDEFINITENESS [DISPUTED]

**Blackbird's Proposal:**

*[Blackbird objects to the inclusion of this instruction.]*

**Feit Electric's Proposal  [assuming the Court desires input from the jury on this issue]:**[40]

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover with reasonable certainty. If a claim does not meet that requirement, then the claim is said to be indefinite and is invalid.

In this case, Feit Electric contends that claim 12 of the '747 Patent is invalid because the language of claim 12 is indefinite. To prevail on that contention, Feit Electric must show that it is highly probable that a person of ordinary skill in the art would not understand what is and is not covered by claim 12 of the patent.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the written description contained in the patent. Absolute clarity is not necessary. Rather, a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, fail to inform, with reasonable certainty, those skilled in the art about the scope of the claimed invention.

## 6    DAMAGES [DISPUTED]

**Blackbird's Proposal:**[41]

If you find that claim 12 of the '747 patent is valid and infringed by Feit Electric, you must then consider what amount of damages to award to Blackbird. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win

---

[40] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 28.

[41] Source: FCBA § 5.6.

this case, on any issue. If you find that Feit Electric has not infringed any valid claim of the patent, then Blackbird is not entitled to any damages.

The damages you award must be adequate to compensate Blackbird for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Blackbird in approximately the same financial position that it would have been in had the infringement not occurred.

Blackbird has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Blackbird establishes that it more likely than not has suffered. While Blackbird is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Blackbird may be entitled to recover. In this case, Blackbird seeks a reasonable royalty. A reasonable royalty is defined as the money amount that the patent-holder and Feit Electric would have agreed upon as a fee for use of the invention at the time just prior to when infringement began, which I will further explain later. But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

**Feit Electric's Proposal:**[42]

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue.

---

[42] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 30.

The damages you award must be adequate to compensate Blackbird for any infringement you determine to have occurred. Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put the parties in approximately the same financial position that they would have been in if the parties had reached an agreement for Blackbird to license the patent to Feit Electric before the infringement began.

Blackbird has the burden to prove the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Blackbird establishes that it more likely than not suffered. While Blackbird is not required to prove the amount of its damages with mathematical precision, Blackbird must prove its alleged damages with reasonable certainty.

In this case, Blackbird seeks a reasonable royalty. A reasonable royalty is defined as the amount of money Blackbird and Feit Electric would have agreed upon as a fee for use of the claimed invention before the infringement first began. I will give you more detailed instructions regarding reasonable royalty damages shortly.

If you find that Blackbird has established Feit Electric induced infringement of claim 12 and that claim 12 is not invalid, then you must determine the reasonable royalty to which Blackbird is entitled to compensate it for that infringement.

### 6.1   REASONABLE ROYALTY

**Blackbird's Proposal:**[43]

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In this case, the hypothetical negotiation would have taken place

---

[43] Source: FCBA § 5.6.

between Suretec, which later transferred its patent rights to Blackbird, and Feit Electric. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.

In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**Feit Electric's Proposal:**[44]

A royalty is a payment made to a patent holder in exchange for the patent holder's permission to make, use, offer to sell, sell, or import the patented invention in the United States. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. It is "hypothetical" because there was not an actual negotiation at that time, but you are asked to imagine, hypothetically, what the negotiation would have entailed. In considering this hypothetical negotiation, you should focus on what the expectations of the parties to the negotiation would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that the parties to the hypothetical negotiation believed the patent was valid and infringed and were willing to enter into an agreement.

---

[44] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 31.

The relevant date for the hypothetical license negotiation is mid- to late-2013, just before the alleged infringement began.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty the parties would have preferred.

### 6.1.1   FACTORS FOR DETERMINING A REASONABLE ROYALTY [DISPUTED]

**Blackbird's Proposal:**[45]

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are as follows.

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales

---

[45] Source: FCBA §5.8; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 26.

of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)    The duration of the patent and the term of the license.

(8)    The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that are due to the patented invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**Feit Electric's Proposal:**[46]

In determining the reasonable royalty, you should consider all the facts known and available to the parties to the hypothetical negotiation at the time the infringement began. The parties in this case agree about who the parties to the hypothetical negotiation would have been: Both Blackbird and Feit Electric agree that Suretec Energy Innovations, Inc., or "Suretec," would have been the hypothetical licensor and that Feit Electric would have been the hypothetical licensee. Some of the factors that you may consider in making your determination of the amount of a reasonable royalty are:

(1) The royalties, if any, received by the licensor(s) for the licensing of the patents-in-suit.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, such as whether the license is non-exclusive or exclusive.

(4) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(5) The licensor's established policy and program to enforce its patent rights, if any, or license its patents under special conditions to preserve its monopoly.

(6) The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, or business risks.

---

[46] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 32-34; *Alarm.com, Inc., et al v. Securenet Tech.* LLC, C.A. No. 15-807 (RGA), Feb. 5, 2019 Trial Tr. at 1116-1117.

(7) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(8) The commercial relationship between the parties to the negotiation such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(9) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(10) The duration of the patent and term of the license.

(11) The established profitability of the products made under the patents, their commercial success, and their popularity.

(12) The nature of the patented inventions, the character of any commercial examples of them, and the benefits to those who have used the inventions.

(13) The extent to which Feit Electric has made use of the claimed invention and any evidence probative of the value of that use.

(14) The opinion testimony of qualified experts.

(15) The amount that the parties to the hypothetical negotiation would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee-who desired, as a business proposition, to obtain a license to manufacture a particular article embodying the patented invention-would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been

acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Feit Electric would have been willing to pay, and Suretec would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between Suretec and Feit Electric at a time prior to when the infringement began.

### 6.1.2   REASONABLE ROYALTY—USE OF COMPARABLE LICENSE AGREEMENTS [DISPUTED]

**Blackbird's Proposal:**[47]

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

---

[47] Source: FCBA § 5.9.

**Feit Electric's Proposal:**[48]

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated among the parties to the negotiation in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the parties to the negotiation in terms of the technologies and economic circumstances· of the contracting parties, when you make your reasonable royalty determination. Licenses that were not the product of an arms-length negotiation should be adjusted accordingly.

### 6.1.3   RUNNING ROYALTY[49] [AGREED]

A reasonable royalty can take the form of a running royalty based on the revenue from or the volume of sales of licensed products.  A running royalty can be calculated, for example, by multiplying a royalty base (that is, the total amount of sales) by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount for each unit.

### 6.1.4   TIME PERIOD FOR CLAIMED DAMAGES [DISPUTED]

**Blackbird's Proposal:**

*[Blackbird objects to the inclusion of this instruction.]*

---

[48] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 35.

[49] Source: FCBA § 5.7.

**Feit Electric's Proposal:**[50]

Blackbird is only seeking damages in this case from August 2013 to the present.  Blackbird is not seeking damages for any infringement before that date.  Feit Electric contends that there are different dates for the calculation of damages, and I will decide the dates that you should use to determine damages. In addition, if there is any period of time for which you find that Blackbird has not proven active induced infringement, you should not award any damages for that time period.

# 7    DELIBERATION AND VERDICT

## 7.1    INTRODUCTION [DISPUTED]

**Blackbird's Proposal:**[51]

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, to me, or to anyone else except each other about the case. The first thing you should do is select a foreperson. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson.

---

[50] Source: *EMC Corp., et al v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, D.I. 448, Final Jury Instructions, at 42.

[51] Source: *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 29; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 28.

**Feit Electric's Proposal:**[52]

Now let me finish by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I will probably have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone outside of the jury how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## 7.2    UNANIMOUS VERDICT [DISPUTED]

**Blackbird's Proposal:**[53]

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A verdict form has been prepared for you. The verdict form asks you a series of questions about the parties' claims. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will

---

[52] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 37.

[53] Source: *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 28.

then return to the courtroom and your foreperson will give your verdict. Unless you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.

**Feit Electric's Proposal:**[54]

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. The verdict form asks you a series of questions about the parties' contentions. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the form, and you will all sign it. You will then return to the courtroom and your foreperson will give your verdict. Unless you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.

---

[54] Source: *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 38.

### 7.3    DUTY TO DELIBERATE[55] [AGREED]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4    NO OUTSIDE INFORMATION OR COMMUNICATION[56] [AGREED]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a smart phone, computer, the internet, or website such as Facebook, Instagram, Snapchat, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information

---

[55] Source:  *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 39; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 31; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 29.

[56] Source:  *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 40; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 31-32.

about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5    COURT HAS NO OPINION[57] [AGREED]

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

---

[57] Source:  *Bio-Rad Lab., Inc., et al v. 10X Genomics, Inc.*, C.A. No. 15-cv-152-RGA, D.I. 470, Final Jury Instructions, at 41; *Alarm.com v. SecureNet Technologies LLC*, C.A. No. 1:15-00807-RGA, D.I. 228, Final Jury Instructions, at 32; *AVM Technologies, LLC v. Intel Corp.*, No. 1:15-cv-00033-RGA, D.I. 719, Final Jury Instructions, at 29.

Dated:  December 16, 2020

OF COUNSEL:                                     STAMOULIS & WEINBLATT LLC

Wendy Verlander                                 */s/ Stamatios Stamoulis*
wverlander@blackbird-tech.com                   Stamatios Stamoulis #4606
Jeffrey Ahdoot                                  stamoulis@swdelaw.com
jahdoot@blackbird-tech.com                      Richard C. Weinblatt #5080
Matthew C. Berntsen                             weinblatt@swdelaw.com
mberntsen@blackbird-tech.com                    800 N. West Street, Third Floor
Blackbird Tech LLC d/b/a                        Wilmington, DE 19801
Blackbird Technologies                          Telephone: (302) 999-1540
One Boston Place, Suite 2600
Boston, MA 02108
617.307.7100

David A. Gerasimow
gerasimow@gerasimowlaw.com
The Law Offices of
  David A. Gerasimow, P.C.
73 W. Monroe St.                                *Attorneys for Plaintiff*
Chicago, IL 60603                               Blackbird Tech LLC d/b/a
312.919.4254                                    Blackbird Technologies


                                                /S/ *Michael J. Flynn*
OF COUNSEL:                                     MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                                Karen Jacobs (#2881)
John M. Hintz                                   Michael J. Flynn (#5333)
Christopher J. Harnett                          1201 North Market Street
MAYNARD, COOPER & GALE, P.C.                    P.O. Box 1347
551 Fifth Avenue, Suite 2000                    Wilmington, DE  19899
New York, NY  10176                             (302) 658-9200
(646) 609-9280                                  kjacobs@mnat.com
jhintz@maynardcooper.com                        mflynn@mnat.com
charnett@maynardcooper.com
                                                *Attorneys for Defendant Feit Electric Company, Inc.*

46

## CERTIFICATE OF SERVICE

I hereby certify that this document was served via email upon all counsel of record via

ECF on December 16, 2020.

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis